253 N.J. Super. 327 (1991)
601 A.2d 780
ANTONIO F. GONCALVES AND PALMIRA GONCALVES, HIS WIFE, PLAINTIFFS,
v.
WIRE TECHNOLOGY & MACHINERY CO., WIRE TECHNOLOGY & MACHINERY CO., INC., COOK MACHINERY CO., COOK MACHINERY, COOK MACHINERY INTERNATIONAL, INC., THE ENTWISTLE COMPANY, ABC MANUFACTURING CORP., A FICTITIOUS NAME, ACTUAL NAME PRESENTLY UNKNOWN TO PLAINTIFFS, DEF DISTRIBUTING CORP., A FICTITIOUS NAME, ACTUAL NAME PRESENTLY UNKNOWN TO PLAINTIFFS, AND/OR GHI SERVICING CORP., A FICTITIOUS NAME, ACTUAL NAME PRESENTLY UNKNOWN TO PLAINTIFFS, DEFENDANTS.
Superior Court of New Jersey, Law Division Union County.
Decided October 25, 1991.
*328 Forman, Forman, Cardonsky, Andril & Ungvary by Robert C. Carroll, for plaintiffs.
Reiseman & Sharp by Sam Rosenberg, for defendants.
ALLEY, J.S.C.
The principal issue decided in this opinion is whether, as a matter of law, the purchaser of the assets of a defunct manufacturer is immune from liability to a plaintiff injured by defective equipment made by that manufacturer, as that liability is articulated in Ramirez v. Amsted Industries, Inc., 86 N.J. 332, 431 A.2d 811 (1981), merely because the purchase occurred in a liquidation proceeding under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701 et seq.
It is undisputed for purposes of this decision that on July 1, 1987, plaintiff Antonio Goncalves was injured while working in the wire spool storage area of the American Metal Molding *329 Company's plant in Edison, New Jersey. The spooler machine whose defects caused the injuries was manufactured in 1979 by defendant Wire Technology and Machinery Company, trading as Cook Machinery ("Cook").
On May 30, 1983, well before Mr. Goncalves's injuries, Cook had filed a petition for bankruptcy in the United States Bankruptcy Court for the District of New Jersey. Promptly thereafter, in July 1983, Cook's original bankruptcy proceeding, which had been brought under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 et seq, was converted to a proceeding under Chapter 7 of the U.S. Bankruptcy Code, 11 U.S.C. 701, et seq. Chapter 7 is entitled "Liquidation". On October 6, 1983, as part of the Chapter 7 liquidation, the Bankruptcy Court entered an Order allowing the sale of various assets of Cook to the defendant Entwistle Company ("Entwistle") for $443,000.00.
Plaintiffs have moved for summary judgment, alleging that Entwistle is the successor to Cook's relevant product line and should be held to answer financially for injuries caused by the defective product made by Cook. Entwistle has cross-moved for summary judgment, asserting that it is not liable as a successor to Cook because, among other things, it did not cause the destruction of Cook's business.
The New Jersey Supreme Court in Ramirez v. Amsted Industries, Inc., 86 N.J. 332, 431 A.2d 811 (1981), and Nieves v. Bruno Sherman Corp., 86 N.J. 361, 431 A.2d 826 (1981), changed the prior law that had limited to narrow, traditional grounds, as set forth in cases such as McKee v. Harris-Seybold Co., 109 N.J. Super. 555, 264 A.2d 98 (Law Div. 1970), aff'd. 118 N.J. Super. 480, 288 A.2d 585 (App.Div. 1972) (see, Ramirez, 86 N.J. at 340, 431 A.2d 811), the liability of a purchaser of a product line for injuries caused by defects in products manufactured by its predecessor. Quoting from the law as developed by the California Supreme Court in Ray v. Alad Corp., 19 Cal.3d 22, 31, 560 P.2d 3, 9, 136 Cal. Rptr. 574, 580 (1977), our *330 Supreme Court in Ramirez, 86 N.J. at 349, 431 A.2d 811, noted the following "three-fold justification for ... imposition of potential liability upon a successor corporation that acquires the assets and continues the manufacturing operation of the predecessor," namely,
"(1) The virtual destruction of the plaintiff's remedies against the original manufacturer caused by the successor's acquisition of the business; (2) the successor's ability to assume the original manufacturer's risk-spreading role; and (3) the fairness of requiring the successor to assume a responsibility for defective products that was a burden necessarily attached to the original manufacturer's goodwill being enjoyed by the successor in the continued operation of the business."
Id.
The determinative issue the parties have raised on these cross-motions is whether Entwistle's purchase of certain Cook assets "caused" the destruction of plaintiffs' remedies against Cook, as referred to in the first part of the Ray Court's three-fold justification, or whether Entwistle should be held not liable on a Ramirez theory because Cook was already defunct and Entwistle could not have "caused" Cook's demise. As noted, Cook entered into voluntary bankruptcy, first filing under Chapter 11, but shortly thereafter liquidating its estate under Chapter 7.
In Wilkerson v. C.O. Porter Machinery, 237 N.J. Super. 282, 567 A.2d 598 (Law Div. 1989), the successor entity purchased assets of the manufacturer in a proceeding under Chapter 11 of the Bankruptcy Code, not a Chapter 7 liquidation, and continued to manufacture a product similar to the one that had injured plaintiff. The sale occurred more than two years before the manufacturer's amended liquidation plan was confirmed. Id. at 286, 567 A.2d 598. Because the sale was in the course of the Chapter 11 reorganization, the manufacturer, at least in theory, was viable or capable of being revived, so that plaintiff's potential remedies against it might have been salvageable. The defendant purchased most of defendant's manufacturing equipment and related assets during the Chapter 11 reorganization proceeding, not the Chapter 7 liquidation, which *331 did not occur until two years later. By purchasing most of its predecessor's assets, the defendant arguably "caused" the destruction of plaintiff's remedies against the original manufacturer.
In the learned opinion in Wilkerson, the Court considered whether it was the successor's acquisition or the sale that should be viewed as the cause of the "destruction of ... remedies" against the original manufacturer. Id. at 289, 567 A.2d 598. It continued, "If it is the sale, then bankruptcy warrants no blanket exemption. Nieves, the companion case to Ramirez, indicates that it is the acquisition or transfer and not the particular acquirer that triggers liability." Id. at 289-90, 567 A.2d 598. An underlying issue, of course, is whether federal law preempts the Ramirez/Nieves rule from effecting a state law determination of successor liability merely because the sale occurs in a proceeding in a United States Bankruptcy Court under the Bankruptcy Code. It has already been determined in this State that there is no such preemption, Wilkerson, 237 N.J. Super. at 300, 567 A.2d 598, and as is discussed below, this Court is not disposed to depart from this determination made in Wilkerson.
Plaintiffs seek to apply Ramirez/Nieves in a context in which those cases are not reported to have been applied in New Jersey. Wilkerson dealt, as noted, not with a defunct business under Chapter 7 of the Bankruptcy Code but with a Debtor whose proceeding at that time was being handled in a Chapter 11 proceeding and thus, at least theoretically, was capable of continuing.
In examining the three-part Ray "justification," as announced in New Jersey by Ramirez, the focal point in this case is whether the phrase "caused by the successor's acquisition of the business" is to be interpreted literally, or whether "caused" should be ascribed a broader meaning than its customary one. The latter possibility requires serious consideration, if only because the Supreme Court employed the term "caused" in a *332 case that undoubtedly was meant to express, in the Court's own words, "the public policy of spreading the risk to society at large for the cost of injuries from defective products ...," and the Court viewed that as consistent with the "progressive character of New Jersey decisional law in the area of strict products liability...." Ramirez, 86 N.J. at 350, 431 A.2d 811.
If an expansive interpretation of the "caused by" language was intended by our Supreme Court in Ramirez/Nieves, then it might plausible to substitute for the phrase, "caused by the successor's acquisition of the business," language such as the following: "because a sufficiently significant portion of the manufacturer's business has been transferred to the defendant successor." In that event, the analytical focus would be on the objective fact of the transfer rather than on the potentially more subjective fact of the transferee's conduct or intentions, and the first part of the three-part justification could be read as an inquiry into whether there has been a "virtual destruction of the plaintiff's remedy against the original manufacturer ... [because a sufficiently significant portion of the manufacturer's business has been transferred to the defendant successor]."
It might be argued that to permit the Ramirez rule to be applied against Entwistle would disrupt business arrangements or bankruptcy purchases made in reliance on the narrow construction of the "caused by" phrase suggested above. That argument, however, is not persuasive, since not only did Entwistle purchase the Cook assets almost two years after Ramirez, but also the Rubicon of rejecting the determinative nature of transactional reliance was crossed by the Ramirez decision ten years ago. Ramirez, 86 N.J. at 353-55, 431 A.2d 811. The Supreme Court made it plain that past transactional reliance is not a factor that should deter affording a Ramirez remedy, if the remedy is warranted by the overall circumstances, including fairness and public policy considerations (id.). Moreover, Ramirez resulted in an intentional change by the Supreme Court in pre-existing law, and that is a far different circumstance than pertains here. This Court is only being *333 asked to apply the existing rule in Ramirez in a different context, and if it were to extend to or deny these plaintiffs a Ramirez remedy, it would not be because it conceives its function as a trial court as one of criticizing, extolling, expanding, or contracting the scope of the Ramirez rule, for the opposite is the case. This Court simply discharges the restricted role of divining how the Supreme Court would have dealt with the present facts had it been confronted with them when it established the precedents that bind the lower Courts. Any alleged reliance in the present case can be disregarded as not arising from a change in the law, but as being based merely on a mistaken prediction of how the Ramirez rule would be applied to these facts.
As noted, this Court will not examine anew Wilkerson's resolution of the issue whether the Bankruptcy Code preempts the application of Ramirez to purchases made on bankruptcy proceedings, nor will it do so with respect to Wilkerson's determination that the Ramirez doctrine can apply to purchases of assets in a Chapter 11 reorganization. Though it is not a binding precedent of the Supreme Court or the Appellate Division, Wilkerson is a decision by a judge of coordinate jurisdiction and thus should be accorded due consideration, See State v. Mundy, 113 N.J. Super. 308, 273 A.2d 620 (Law Div. 1970), affirmed 113 N.J. Super. 301, 273 A.2d 617 (App.Div. 1971). The analysis of the preemption and other bankruptcy issues in Wilkerson demonstrate that the result there was reached after thorough consideration. This Court sees no need to depart from such a thoughtful and thorough ruling.
Entwistle has contended that to apply Ramirez-type successor liability to it would interfere with the ability of creditors in Bankruptcy Court proceedings to realize the fullest possible value for the assets of a Debtor in a Chapter 7 case. But having refused to reject Wilkerson, this Court sees no reason to apply a different rule for asset purchases made in Chapter 7 proceedings than Wilkerson has recognized for purchases made in Chapter 11 proceedings. Indeed, at least one argument for *334 non-disparate treatment of those separate types of proceedings is evident. A Debtor in Chapter 11, whose business is subject to being revived, should not be exposed to the danger of being bled to death merely so that an asset purchaser could reap from that death the advantage of the proceeding having been converted to a liquidation under Chapter 7, thereby resulting in immunity from Ramirez-prescribed liability. It is difficult to see how public policy would be served by providing an incentive to kill off a potentially viable business simply so that the purchaser could avail itself of such a technicality.
To be sure, in a narrow and technical sense, Entwistle could be said not to have destroyed remedies that the plaintiffs may have had against the original manufacturer of the equipment, because their loss could be attributed to the death of the business at a time prior to the purchase. But the Court is persuaded that under Ramirez a technically-based distinction should not be determinative. In short, the ultimate result here is that the purchaser obtained, and the manufacturer or its successor were divested of, at least a portion of the relevant product line, and the Court determines as a matter of law that plaintiffs are correct in their contention that a purchaser of the assets of a manufacturer in a sale in a proceeding under Chapter 7 of the Bankruptcy Code is as much subject to successor liability under Ramirez as is a purchaser in a Chapter 11 proceeding. As noted above, the decision in Ramirez, which was remedial in nature, is sufficiently broad that the first part of the Ray/Ramirez three-part test could be deemed to apply to "the virtual destruction of the plaintiff's remedy against the manufacturer... [because a sufficiently significantly portion of the manufacturer's business has been transferred to the defendant successor]."
The respective summary judgment cross-motions of plaintiffs and Entwistle raise genuine issues of material fact, however, concerning whether the detailed factual circumstances surrounding Entwistle's purchase should make the Ramirez *335 rule applicable to this particular case, e.g., whether Entwistle (a) purchased, and (b) actively carried on and received adequate benefits from, sufficiently significant portions of Cook's relevant product line for Ramirez to apply to these facts. Thus each of the cross-motions will be denied, except that on the single legal issue set forth above an order for partial summary judgment will be entered for plaintiff. The disputed factual issues as to whether Entwistle in fact has come within the Ramirez rule are reserved for determination at the trial, to the same extent that such issues would be reserved if the purchase had taken place in a wholly private sale instead of a Chapter 7 proceeding.