709 A.2d 253

JUSTIN LEFEVER, PLAINTIFF–APPELLANT, v. LULL IN-
DUSTRIES, INC., DEFENDANT–RESPONDENT, AND
LULL ENGINEERING CO., INC., DEFENDANT.

K.P. HOVNANIAN ENTERPRISES, INC., A/K/A HOVNANIAN AT
BRIDGEWATER II, DEFENDANT/THIRD–PARTY PLAINTIFF,
v. SLS, INC., T/A ARBE CONSTRUCTION COMPANY, DEFEN-
DANT/THIRD–PARTY DEFENDANT.

GILES & RANSOME, INC., T/A RANSOME LIFT, DEFENDANT–
THIRD PARTY PLAINTIFF, v. LULL INDUSTRIES, INC.,
DEFENDANT/THIRD PARTY DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued March 23, 1998—Decided April 23, 1998.

Before Judges LANDAU, NEWMAN and COLLESTER.

*Craig J. Hubert,* argued the cause for appellant (*Brotman & Graziano,* attorneys; *Dennis S. Brotman,* on the brief).

*Ira S. Broadman,* (*Broadman & Hartman*) of the Arizona bar, admitted pro hac vice, and *Steven I. Greene,* argued the cause for respondent (*Steven I. Greene* and *Ira S. Broadman,* attorneys; *Mr. Greene* and *Mr. Broadman,* on the brief).

The opinion of the court was delivered by

LANDAU, J.A.D.

This is an appeal by plaintiff Justin Lefever from the grant of summary judgment to defendant Lull Industries, Inc. on his complaint brought under the product line successor liability doctrine. *See Ramirez v. Amsted Indus., Inc.,* 86 *N.J.* 332, 431 *A.*2d 811 (1981). Plaintiff was injured on January 17, 1989 when a Lull 644 forklift, originally manufactured by defendant Lull Engineering Company, Inc. (Lull Engineering I) tipped over as he operated it. In 1990, plaintiff filed a defective design complaint against "Lull Engineering Co., Inc.," also joining defendants Giles & Ransome, Inc. (the distributor), and K.P. Hovnanian Enterprises,

Inc., owner of the worksite. The latter two defendants settled with plaintiff.

In 1973, Lull Engineering I sold its manufacturing assets to an entity which then changed its name to Lull Engineering Co. (Lull Engineering II). The stock of Lull Engineering II was sold in 1976 to another corporation, Stamatakis Industries, Inc., which continued to engage in the same business. In 1986, the operating assets of Lull Engineering II (consisting of engineering data, dealers, inventory and work in process, and accounts receivable) were transferred to "Lull Corporation," while fixed assets (including plant and manufacturing equipment) were placed in a company known as United Five Star Capital Corporation (Five Star). Each of the transferees were subsidiaries of Stamatakis Industries, Inc. Lull Corporation continued to make the same machines at the same location with the same employees, to sell to the same customers, and to use the logo and trademark used by the predecessors.

Since the transfer in 1986, Lull Engineering II has been dormant, with no assets. Lull Corporation had agreed, as part of the acquisition of assets, to assume responsibility for products liability actions brought in connection with machines manufactured by Lull Engineering II. As noted above, plaintiff initiated his products action against "Lull Engineering Co., Inc."[1] Deeming itself bound by its obligations under the transfer of assets, Lull Corporation undertook to defend the design defect claim.

On March 3, 1992, Lull Corporation filed in Minnesota for Chapter 11 bankruptcy protection, triggering a stay issued by the Bankruptcy Court, inasmuch as plaintiff's action was listed as a suit to which Lull Corporation was a party. Lull Corporation continued to market the same product line during the Chapter 11 proceedings. No proof of claim was filed by plaintiff, although his attorneys were notified of the bankruptcy proceedings.

---

[1] Also referred to in the complaint as Lull Engineering Co. and Lull Engineering Company.

With the approval of the Bankruptcy Court, the assets of Lull Corporation were sold in 1993 by the Trustee. At the same time, the plant, machinery and equipment Lull Corporation was leasing from Five Star were sold by Continental Bank, N.A., which had foreclosed upon Five Star's pledged security interest.

The purchaser, Badger R. Bazen Co. (Badger), thus acquired both Lull Corporation's assets and the physical manufacturing assets it had leased from Five Star. Under the terms of the purchase agreement, Badger did not assume any liability for product liability claims arising prior to the closing date.

In November 1993, immediately following the purchase, Badger assigned all the assets to a new corporation it formed for the purpose, defendant Lull Industries, Inc. (Lull Industries).

Due to the Chapter 11 bankruptcy filing by Lull Corporation on March 3, 1992, proceedings on plaintiff's Law Division complaint were "stayed pursuant to that bankruptcy" in March 1992. However, in January 1995, plaintiff's counsel "obtained a letter from William J. Fisher, the trustee in bankruptcy," which confirmed that the federal bankruptcy stay "did not apply to the Lefever case because the Lefever case was against Lull Engineering and not against Lull Corporation." As a result, plaintiff's Law Division complaint was "reactivated" in February or March 1995.

Eventually, plaintiff moved to file an amended complaint adding Lull Industries as a defendant, and Giles & Ransome moved for leave to file a third-party complaint against Lull Industries. Both motions were argued and granted on October 27, 1995. During the motion hearing, plaintiff's counsel indicated his prior awareness of the bankruptcy proceeding involving Lull Corporation[2]:

I ... wrote to the Trustee in Bankruptcy in Minnesota. That correspondence has been filed with the Clerk of this Court. We learned that Lull, Inc. had filed for bankruptcy but that Lull Engineering was a predecessor corporation without assets which ... never filed for bankruptcy and was not technically subject to the bankruptcy although we can petition to have it included which plaintiff elected not

---

[2] Referred to in the excerpt as "Lull, Inc."

to do in light of the fact that there was a bankruptcy pending filed by the second corporation, Lull, Inc., which I understood had virtually no assets as well.

On October 30, 1995, the judge entered an order granting plaintiff leave to file an amended complaint adding Lull Industries as a defendant. On the same date, he entered an order permitting Giles & Ransome to file a third-party complaint against Lull Industries.

On November 14, 1995, plaintiff filed his amended complaint against Lull Industries, alleging that Lull Industries was the "successor entity to Lull Engineering Company and Lull Corporation." At about the same time, Giles & Ransome filed its third-party complaint against Lull Industries, also alleging that Lull Industries was the "successor entity to Lull Engineering Company and/or Lull Corporation." Giles & Ransome demanded a judgment for contribution and indemnification against Lull Industries.

In February 1996, Lull Industries filed a motion to dismiss plaintiff's amended complaint and the third-party complaint by Giles & Ransome.

On March 15, 1996, this motion was argued and denied. In material part, the judge explained his ruling as follows:

> I'm going to deny the application pending wherein the defendant Lull Industries contends that it is not responsible as a successor corporation as a matter of law. I think this is a classic *Ramirez* situation. This is a case which involves a new corporation which is merely a continuation of the corporation which manufactured the product.... It's clear that the new corporation is advertising under the same name. The new corporation is attempting to utilize the goodwill of the former corporation. The new corporation Lull Industries is continuing essentially the same manufacturing operation as the predecessor corporation.

> With regard to the bankruptcy argument we do have a trial division opinion in New Jersey that indicates that that does not break the chain so to speak. *Wilkerson* [*v. C.O. Porter Machinery Co.,*] 237 *N.J.Super.* 282 [567 *A.*2d 598 (1989)], I think that that is a well reasoned opinion and I ... adopt the reasoning in that opinion as my own for this case. It is clear that the new corporation is merely a continuation of the old corporation. It is manufacturing the same product and is utilizing the goodwill of the Lull name.

The judge's second case reference was to *Wilkerson v. C.O. Porter Machinery Co.,* 237 *N.J.Super.* 282, 567 *A.*2d 598 (Law Div.1989).

6

On March 15, 1996, the judge entered an order denying Lull Industries' motion to dismiss, later denying a motion for reconsideration. We denied leave to appeal.

After discovery was completed, Lull Industries filed a motion for summary judgment, again seeking dismissal of plaintiff's amended complaint and also requesting dismissal of the third-party complaint by Giles & Ransome. At argument on the motion, counsel for Lull Industries agreed that, "except for the bankruptcy," Lull Industries would be "liable as a successor corporation." However, he noted that plaintiff's "injury [in January 1989] took place years before the bankruptcy took place [in March 1992] and years before the bankruptcy sale [in November 1993];" that plaintiff's complaint against Lull Engineering was "listed in the bankruptcy documentation by the corporation [Lull Corporation] as a potential debtor suit against the corporation;" that plaintiff and Giles & Ransome were given "notice of the bankruptcy a day after the bankruptcy filing [on March 3, 1992];" and that, on June 25, 1992, Lull Corporation sent them letters "telling them the deadline [July 16, 1992] for when they must come in and submit their claims." Lull Industries also noted that, despite the prior notice to plaintiff and Giles & Ransome, "they chose to do nothing in the bankruptcy court." Given this, Lull Industries' counsel argued that "their claims are discharged in the bankruptcy by that [November 1993] sale," because the bankruptcy court order approving this sale of assets to Badger "[b]arred all suits which could have been brought during the pendency of the bankruptcy proceeding."

Summary judgment was entered dismissing plaintiff's amended complaint and the Giles & Ransome third-party complaint. The judge distinguished *Wilkerson, supra,* reasoning:

*Wilkerson,* which is really the only New Jersey case which addresses this issue, does not apply. There the Court was concerned with a future tort claim. Here we have a past tort claim. The tort was committed prior to the filing of the petition in bankruptcy. There is not one case anyplace to my knowledge which deals with a tort which was committed before the date of the filing of the bankruptcy petition where a corporation which purchased assets after the bankruptcy proceeding was held responsible as a successor corporation.

In *Wilkerson* the Court was concerned with notice to the plaintiff with regard to the bankruptcy proceeding. Obviously the plaintiff had notice here. The plaintiff was, in fact, listed in one of the schedules attached to the bankruptcy proceeding.

I agree with Mr. Greene's analysis. I don't want to go through all of his argument again, but I do adopt it. I think that if I were to find in favor of the plaintiff and Ransome in this case, it would be an extension of existing law, and I am not willing to go that far.

We disagree.

Initially we observe that plaintiff's complaint was not brought against Lull Corporation, the bankrupt, but against the manufacturer and the current respondent, "Lull Industries, Inc." which continues to manufacture the same product. The latter defendant utilizes the same plant, machinery, employee group, trade name and goodwill, some of which assets were never owned by Lull Corporation.

Those who acquired these assets after *Ramirez* and *Nieves*[3] were decided in 1981 surely had "opportunity to adjust their future conduct and relationships, particularly with regard to the procurement of adequate products liability insurance and other available risk-spreading and cost avoidance arrangements." *See Ramirez, supra,* 86 *N.J.* at 357, 431 *A.*2d 811. Similarly, the 1989 Law Division decision in *Wilkerson* was a familiar part of the business landscape when Lull Corporation filed its Chapter 11 petition in 1992.

As Judge Wecker, who decided *Wilkerson*, read *Ramirez* and *Nieves*, the Court was concerned that transfer of a manufacturer's business assets may destroy a product claimant's remedy against that manufacturer. The "Supreme Court sees *the transfer* of assets and the manufacturer's unavailability to answer in damages as the triggering circumstances and not the precise role of the transferee *nor the form of the transfer.*" *Wilkerson, supra,* 237 *N.J.Super.* at 290, 567 *A.*2d 598 (emphasis added) (footnotes omitted). According to Judge Wecker, under *Ramirez*, satisfaction of this justification for product line successor liability required

---

[3] *Nieves v. Bruno Sherman Corp.*, 86 *N.J.* 361, 431 A.2d 826 (1981).

no more than "the destruction of plaintiff's *remedy* against the manufacturer ... by virtue of *the transfer* of the assets of the product line, combined with the manufacturer's *effective* dissolution and the purchaser's continuation of the product line." *Wilkerson, supra,* 237 *N.J.Super.* at 291, 567 *A.*2d 598 (emphasis added).

Another justification for the product line successor liability doctrine is that a "successor corporation that continues the manufacturing enterprise of its predecessor ... does have the means available for avoiding the risk of harm caused by its predecessor's defective products still present on the market," in that such a successor corporation "rather than the user of the product is in the better position to bear accident-avoidance costs." *Ramirez, supra,* 86 *N.J.* at 351–52, 431 *A.*2d 811. This justification, according to Judge Wecker, "suggests no reason why a purchaser in bankruptcy is any less able to insure against contingent products liability claims than any other purchaser," especially when the Supreme Court in *Ramirez* "has clearly expressed the intention to allow persons injured by defective products to recover against those who can best spread the risk of such injury." *Wilkerson, supra,* 237 *N.J.Super.* at 291, 567 *A.*2d 598.

A third justification for the product line successor liability doctrine is fairness, that is, requiring the successor corporation to assume "responsibility to answer claims of liability for injuries allegedly caused by defective [products]" manufactured by its predecessor is "justified as a burden necessarily attached to its enjoyment of ... [its predecessor's] trade name, good will and the continuation of an established manufacturing enterprise." *Ramirez, supra,* 86 *N.J.* at 349, 352, 431 *A.*2d 811. As the Supreme Court explained in *Ramirez:* "Public policy requires that[,] having received the substantial benefits of the continuing manufacturing enterprise, the successor corporation should also be made to bear the burden of the operating costs that other established business operations must ordinarily bear." *Id.* at 352–53, 431 *A.*2d 811.

The bankruptcy court order of November 9, 1993 approved the sale of the "Debtor Assets" (i.e., the assets of Lull Corporation) to

Badger "free and clear of any lien or interest within the meaning of 11 *U.S.C.* § 363, including but not limited to any claim ... of any kind whatsoever in law or equity." However, plaintiff does not claim an interest in the property of Lull Corporation, and this order does not affect plaintiff's products liability claim against Lull Industries as a successor corporation of the Lull Engineering entities.

It is of no consequence to this case that in 1986, Lull Corporation may have contractually assumed liability for injuries caused by defects in products previously manufactured by Lull Engineering II or other predecessors. In *Bussell v. DeWalt Products Corp.*, 259 *N.J.Super.* 499, 614 *A.*2d 622 (App.Div.1992), *certif. denied,* 133 *N.J.* 431, 627 *A.*2d 1137 (1993), we held, for the same policy reasons stated in *Ramirez,* that, "even where the agreements show an assumption of liability by an immediate purchaser[,] this does not cause a break in the chain of liability of subsequent successor corporations." *Id.* at 518, 614 *A.*2d 622; *see Goncalves v. Wire Tech. & Mach. Co.*, 253 *N.J.Super.* 327, 601 *A.*2d 780 (Law Div.1991). *See also Saez v. S & S Corrugated Paper Mach. Co.*, 302 *N.J.Super.* 545, 551, 695 *A.*2d 740 (App.Div. 1997).

Here, plaintiff was not required to file a claim against Lull Corporation. He had a basis for his complaint against the non-bankrupt manufacturer and others in the chain of distribution and succession. Moreover, Lull Industries has not established, and it is unlikely it could establish, that plaintiff would have received full satisfaction for his damages had he filed a claim against Lull Corporation in the Bankruptcy Court.

In sum, the bankruptcy of Lull Corporation and the orders entered thereunder have not altered the status of Lull Industries as a product line successor under *Ramirez.* We reverse and remand for further proceedings.