Cleveland FORDE, Plaintiff,

v.

KEE–LOX MANUFACTURING COMPA-
NY, INC. and Burroughs Corporation,
Defendants.

No. Civ.–76–458.

United States District Court,
W. D. New York.

Sept. 19, 1977.

Emmelyn Logan-Baldwin, Rochester, N.
Y., for plaintiff.

Nixon, Hargrave, Devans & Doyle, Roch-
ester, N. Y. (William E. McKnight, Roches-
ter, N. Y., of counsel), for defendant Bur-
roughs Corp.

CURTIN, Chief Judge.

This is an employment discrimination
case in which the plaintiff alleges that the
defendant, Kee-Lox Manufacturing Compa-
ny, Inc., discriminated against him in viola-
tion of Title VII of the Civil Rights Act of
1964 and 42 U.S.C. § 1981. Until it ceased

business operations in 1976, Kee-Lox manufactured carbon paper, typewriter ribbons, ditto masters, and similar materials in Rochester, New York. The plaintiff was employed by Kee-Lox from November 11, 1952 until October 30, 1974. During that time he worked as a material handler, a reel operator, a lacquer machine operator, a shipping clerk, and a foreman.

On December 19, 1974, Kee-Lox filed a petition for an arrangement under Chapter XI of the Bankruptcy Act in the Eastern District of Pennsylvania. Receivers were appointed shortly thereafter. The arrangement apparently failed because, on August 12, 1976, Kee-Lox was adjudicated a bankrupt, and a trustee was appointed. Two days later, on August 14, 1976, Kee-Lox discontinued its business operations and terminated all of its remaining employees.

At a special meeting of the creditors held on September 22, 1976, defendant Burroughs Corporation offered to buy most of the noncash, nonpersonal assets of Kee-Lox. The offer was approved by the Bankruptcy Court in an order dated September 28, 1976, in which the court directed the trustee in bankruptcy to transfer the noncash, nonpersonal assets of Kee-Lox to Burroughs "free and clear of liens, including tax liens, if any, claims, encumbrances, demands and rights of creditors, or any other person . . . ."

The plaintiff filed this lawsuit on October 12, 1976, against both Kee-Lox and Burroughs Corporation. The Bankruptcy Court on October 27 restrained the plaintiff from continuing his action against Kee-Lox. The plaintiff is now proceeding against the Burroughs Corporation, alleging that Burroughs plans to continue the Kee-Lox business without substantial interruption, or change in its operations, and therefore has succeeded to Kee-Lox's liability for employment discrimination. The plaintiff does not allege that Burroughs has itself discriminated against him, but only that Burroughs is responsible for discrimination committed by Kee-Lox up until the time of the plaintiff's termination in December, 1974.

This case is before the court on defendant Burroughs' motion to dismiss or, in the alternative, for summary judgment. The plaintiff has filed a cross motion for summary judgment. Since matters outside the pleadings have been presented to and considered by the court, the defendant's motion shall be treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

The court heard oral argument on both motions on February 14, 1977, and the issues have been extensively briefed by the parties. In reaching its decision, the court has carefully considered the following supporting papers: the affidavits and accompanying exhibits of Gerald L. Paley, Esq., J. Roy Henry, John W. O'Leary and Val E. Coluni, for the defendant; the defendant's memorandum of law; the letter briefs of the defendant's attorneys dated February 24, March 7, and April 19, 1977; the affirmations and accompanying exhibits of Emmelyn Logan-Baldwin, Esq., dated January 13, 1977 and February 14, 1977, for the plaintiff; the affidavit of Cleveland Forde, plaintiff; and the letter briefs of the plaintiff's attorney dated January 13, February 9, February 16, March 1, and May 16, 1977. For the reasons stated below, summary judgment is granted to the defendant.

The defendant bases its motion on three grounds. First, it asserts that it purchased the Kee-Lox assets through the Bankruptcy Court free of all claims, and therefore cannot be held liable for employment discrimination by Kee-Lox. Second, Burroughs argues that it cannot be treated as Kee-Lox's "successor" because it has not continued Kee-Lox's business operations without substantial interruption or change. Finally, Burroughs claims that the plaintiff's failure to file a charge against Burroughs with the Equal Employment Opportunity Commission is a jurisdictional defect compelling dismissal of the complaint. Because the court believes that its ruling on the first ground renders consideration of the other two unnecessary, the following discussion is limited to the first set of arguments raised by the parties.

Under § 70 of the Bankruptcy Act, the trustee in bankruptcy takes title to

all non-exempt property of the bankrupt by operation of law. 11 U.S.C. § 110(a). One of his responsibilities is to liquidate the estate and distribute the proceeds to the bankrupt's creditors. 11 U.S.C. § 75. Included among the trustee's liquidation powers is "the power to sell the bankrupt's property, free of all claims, liens, or incumbrances." *Van Huffel v. Harkelrode,* 284 U.S. 225, 227, 52 S.Ct. 115, 116, 76 L.Ed. 256 (1931); 4A *Collier on Bankruptcy* ¶ 70.97, at 1133 (14th ed. 1976). Once the sale is approved by the bankruptcy court, the purchaser acquires legal and equitable title to the property purchased. The rights and quantum of property acquired by the purchaser depend on the terms of the sale as ordered by the court. 4A *Collier, supra,* ¶ 70.98, at 1198.

In this case, Burroughs offered to purchase the Kee-Lox assets from the trustee at a private sale. The offer was accepted by the trustee, and approved by the Bankruptcy Court in an order providing in pertinent part:

ORDERED AND DECREED:

\* \* \* \* \* \*

3. That Alfred Blasband, Trustee, be, and he hereby is, authorized, empowered and directed, upon receipt of the consideration above mentioned and hereinafter mentioned, and in accordance with the provisions of said Agreement, to grant, convey, sell, transfer and assign, at private sale, to Burroughs, free and clear of liens, including tax liens, if any, claims, encumbrances, demands and rights of creditors, or any other person, all of his right, title and interest, in and to: [the purchased Kee-Lox assets] . . . .

■ The plaintiff's claim against Burroughs stems exclusively from its acquisition of the Kee-Lox assets and not from any employment relationship between Burroughs and the plaintiff. According to the express terms of the court's order, Burroughs acquired title to the Kee-Lox property free of all claims. This presumably includes the plaintiff's claim of employment discrimination.

The plaintiff does not challenge the power of the Bankruptcy Court to order a sale of the bankrupt's assets free from liens, with the lienholder's rights transferred to the proceeds of the sale. He argues, however, that his claim against Kee-Lox amounts to more than a "mere lien," since his demand for reinstatement cannot be reduced to a fixed amount of money that could be satisfied out of the proceeds of the sale. As stated in his motion to compel:

Plaintiff's interest relates to gaining and continuing employment in a job for which he is qualified by virtue of competence and experience, to being paid fairly for his work in the past, present and future, and to being given the opportunity to advance in his employment without being limited by barriers of race, color or creed. Although part of his interest could be fulfilled by remitting him to the proceeds of the sale of Kee-Lox's assets, the major part of his interest, that which relates to present and future employment, would go unfulfilled by such a requirement.

Claims that amount to more than mere liens, he argues, cannot be extinguished by a sale of the bankrupt's assets.

The plaintiff concedes that he cannot find direct authority supporting his position. The court has been similarly unsuccessful. Yet he urges the court to accept his argument as a sound basis for decision.

■ There are two major difficulties with the plaintiff's position. First, the plaintiff would allow claimants such as himself to assert their claims against purchasers of the bankrupt's assets, while relegating lienholders to the proceeds of the sale. This elevates claims that have not been secured or reduced to judgment to a position superior to those that have. Yet the Bankruptcy Act is clearly designed to give liens on the bankrupt's property preference over unliquidated claims.

An additional difficulty with the plaintiff's position is that it would seriously impair the trustee's ability to liquidate the bankrupt's estate. If the trustee in a liquidation sale is not able to transfer title to the bankrupt's assets free of all claims, including civil rights claims, prospective purchasers may be unwilling to pay a fair

price for the property, leaving less to distribute to the creditors. *See* 6 *Remington on Bankruptcy* § 2577, at 87 (5th ed. 1952); 4A *Collier, supra,* ¶ 70.97, at 1132.

■ Although there may be an apparent conflict between the policies of the Bankruptcy Act and the laws prohibiting employment discrimination, the provisions of the Bankruptcy Act should be given their full import in the absence of legislation to the contrary. In *Shopmen's Local Union No. 455 v. Kevin Steel Products, Inc.,* 519 F.2d 698 (2d Cir. 1975), the Bankruptcy Act was read literally, allowing the bankrupt to reject a collective bargaining agreement entered into prior to bankruptcy, even though the policies of the Labor Act called for a different result. The situation here is analogous. The Bankruptcy Act clearly entitles purchasers at liquidation sales to take title to the property free of all claims. If this conflicts with the policies of the Civil Rights Act, the legislature should amend the Bankruptcy Act to create an exception for civil rights claims.

The plaintiff also argues that even if his claim is treated as a lien interest, it should survive the sale in this case because the bankruptcy remedy is inadequate. This argument is based on the general principle underlying the Bankruptcy Act that valid liens cannot be affected by bankruptcy proceedings. *See* 4A *Collier, supra,* ¶ 70.70; 6 *Remington, supra,* § 2577, at 87. In the context of liquidation sales, transferring a lien to the proceeds of the sale has repeatedly been upheld on the theory that it only affects the lienholder's remedy for enforcing the lien obligation, and not the underlying obligation itself. Implicit in these holdings is the determination that the substituted remedy adequately protects the lienholder's rights. 6 *Remington, supra,* § 2577 at 87.

The plaintiff argues that his remedy in bankruptcy is inadequate because he is demanding prospective non-monetary relief which Kee-Lox obviously cannot provide, and therefore his claim survives the sale of the Kee-Lox assets to Burroughs.

The plaintiff's argument is unconvincing. First, the Bankruptcy Act principle requiring preservation of valid liens refers to contractual obligations protected by the Constitution. In this case, the plaintiff's claim against his former employer is not based on a contract, but stems from rights given to the plaintiff by the Civil Rights Act of 1964. He therefore cannot invoke the protection afforded to contractual obligations in arguing that his claim survives the sale.

Second, Burroughs is not responsible for the plaintiff's inability to obtain prospective relief from Kee-Lox. As a practical matter, the plaintiff in this case may be left without a prospective remedy for a meritorious claim of discrimination. This state of affairs is one of the unfortunate yet unavoidable consequences of our bankruptcy system. It does not, without more, justify the imposition of liability on Burroughs for the acts of Kee-Lox.

The Bankruptcy Act provides a procedure for civil rights claimants such as the plaintiff to follow. This was recognized by the court in *Young v. Kerr Industries, Inc.,* 13 E.P.D. ¶ 11,340 (M.D.N.C.1974). In that case, the plaintiffs brought a civil rights action against the defendant in federal court prior to the initiation of reorganization proceedings under Chapter X of the Bankruptcy Act. The Bankruptcy Court subsequently stayed the civil rights action. The plaintiffs, contending that the order had no effect on their civil rights case, moved to compel discovery. The federal district court held that the stay must be honored, and suggested that the plaintiffs pursue their claims in Bankruptcy Court:

Plaintiffs will not be prejudiced by requiring them to initially prosecute their action through the bankruptcy court. A well established procedure exists to file proof of their claims and to apply, if they so choose, to have the matter of their claims resolved in a separate judicial proceeding. See Vol. 3, *Collier on Bankruptcy,* ¶ 57.15.

The plaintiff's remedy in this case was to file a claim with the trustee in bankruptcy.

Although the analysis in this case might change if Kee-Lox were merely undergoing

an arrangement or a reorganization, liquidation of a corporation is too drastic a step to justify the fear that employers will use bankruptcy to avoid their responsibilities under Title VII. In *Shopmen's Local Union No. 455 v. Kevin Steel Products, Inc., supra,* at 705–06, the court rejected the plaintiff's suggestion that businesses would "swarm into bankruptcy proceedings in order to free themselves of labor agreements," pointing out that the adverse consequences of bankruptcy are far too harsh. Certainly the same holds for civil rights claims, which typically are much smaller than union claims in terms of monetary impact and the threat of labor unrest.

Even assuming, as the plaintiff alleges, that Burroughs has continued the Kee-Lox business operations without substantial interruption or change, the court would nevertheless grant defendant's motion for summary judgment. Since Burroughs purchased the Kee-Lox assets at a liquidation sale which by its express terms was free of all claims, the plaintiff cannot assert his Title VII claim against Burroughs.

So ordered.