**R.C.M. EXECUTIVE GALLERY CORP., Carmen Martinez and Roger Mojer, Plaintiffs,**

v.

**ROLS CAPITAL CO., Marvin Goldman, Paul Goldman, Jerome Goldman and Alex Reizner, Defendants.**

No. 93 Civ. 8571 (JGK).

United States District Court, S.D. New York.

Sept. 25, 1995.

Carmen Pacheco, Betty Lugo, Paheco & Lugo, New York City, for plaintiffs.

Jordan B. DeFlora, Pearl River, NY, for defendant Rols Capital Co.

## OPINION AND ORDER

KOELTL, District Judge:

This case arises out of a loan made to the plaintiffs by Rols Capital Co. ("Rols partnership"), a New Jersey partnership that, following the plaintiffs' repayment of the loan, filed for bankruptcy in June 1991. Alleging that the Rols partnership charged them a usurious rate of interest, the plaintiffs have sued various individual defendants along with J.K. Funding, which is a New Jersey corporation doing business under the name Rols Capital Co. ("J.K. Funding" or "Rols corporation"). J.K. Funding purchased the assets of the Rols partnership pursuant to an asset purchase agreement and as part of the bankruptcy reorganization plan of the Rols partnership. The plaintiffs seek to hold J.K. Funding liable for their various claims under a theory of successor liability.

J.K. Funding has moved for summary judgment under Fed.R.Civ.P. 56, arguing that it cannot be held liable as a successor to the Rols partnership. J.K. Funding also has moved, in the alternative, to dismiss the plaintiffs' claims against it under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* ("RICO"), pursuant to Fed.R.Civ.P. 12(b)(6), arguing that the plaintiffs have failed to state a claim upon which relief can be granted. For the reasons given below, J.K. Funding's motion for summary judgment is denied, and its motion to dismiss the RICO claims is granted.

## I.

The following facts are undisputed for purposes of this motion. In January 1988, the plaintiffs, R.C.M. Executive Gallery, Corp. ("R.C.M."), Carmen Martinez ("Martinez") and Roger Mojer ("Mojer"), obtained a commercial loan of $55,000 from the Rols partnership in connection with their purchase of a bar and restaurant. R.C.M., a minority-owned business, is a New York corporation, Martinez is the president of R.C.M., and Mojer is Martinez's husband. As collateral for the loan, Martinez executed a mortgage on her home, Martinez and Mojer executed individual guarantees, and Martinez and Mojer executed a confession of judgment.

The plaintiffs repaid the loan in full, making their last payment on January 25, 1993. The plaintiffs then sued the defendants in December, 1993, alleging that the Rols partnership charged them a usurious rate of interest. They have asserted claims for, among other things, misrepresentation, fraud, and violations of RICO, federal and state usury laws, and federal lending laws.

All of the individual defendants were associated with the Rols partnership: Marvin Goldman was the president and owner; Paul Goldman was an officer and an owner; Alex Reizner was an officer; and Jerome Goldman was an attorney employed by and retained by the Rols partnership. J.K. Funding purchased the assets of the Rols partnership in April 1993 pursuant to the bankruptcy court order confirming the Rols partnership's plan of reorganization and an asset purchase agreement. These assets primarily consisted of outstanding loans. The plaintiffs allege that they never received notice of the bankruptcy proceeding and paid off their loan without knowing that the Rols partnership had filed a petition. (See Response to Rule 3(g) statement at ¶ 22.)

Jerry Kaplan ("Kaplan"), a former partner of the Rols partnership, currently owns J.K. Funding. Kaplan sold his interest in the Rols partnership on or about July 1, 1987, before the loan that is at issue in this case was made to the plaintiffs. Kaplan registered the name "Rols Capital Co." with the New Jersey Secretary of State, as a corporation, to facilitate his collection of the out-

standing loans. Kaplan operates the New Jersey corporation J.K. Funding as "J.K. Funding, Inc. d/b/a Rols Capital Co."

J.K. Funding argues that as a matter of law it cannot be held liable for any wrongdoing on the part of the Rols partnership and that it is therefore entitled to summary judgment.[1] It argues that because it purchased the assets of the Rols partnership in the context of a bankruptcy reorganization plan and that under the terms of this plan J.K. Funding did not assume liability for claims like the plaintiffs', it cannot be held for such claims as a successor to the Rols partnership.[2] J.K. Funding also argues that it cannot be held liable because it is a completely separate entity from the Rols partnership and because it had absolutely no involvement in the loan the Rols partnership made to the plaintiffs, which had been paid off before J.K. Funding acquired the Rols partnership assets. J.K. Funding also argues, in the alternative, that the plaintiffs' RICO claims should be dismissed with respect to it under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## II.

■ The Court first considers the defendant's motion for summary judgment. J.K. Funding argues that it is entitled to summary judgment because it is a separate and distinct entity from the Rols partnership and cannot be held liable for the plaintiffs' claims under the law of successor liability. Because there are factual issues that preclude a determination of whether the defendant is liable as a successor to the Rols partnership, the defendant's summary judgment motion is denied.

■ Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Gallo v. Prudential Residential Servs. Ltd. Partnership,* 22 F.3d 1219, 1223 (2d Cir.1994). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *see also Gallo,* 22 F.3d at 1223. Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party. *See Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 37 (2d Cir.1994).

The plaintiffs have asserted both state and federal claims against the defendant. At oral argument, the parties agreed that New Jersey successor liability law applies to both the state and federal claims;[3] however, the application of state law to the plaintiff's federal claims on this issue is questionable. Neither party has cited any cases supporting the use of state law to determine successor liability for federal causes of action. Many courts have applied federal law to the issue of successor liability for various federal causes of action. *See, e.g., Chicago Truck Drivers, Helpers, and Warehouse Workers Union (Independent) Pension Fund v. Tasemkin, Inc.,* 59 F.3d 48, 49 (7th Cir.1995) (applying federal common law of successorship to ERISA); *Steinbach v. Hubbard,* 51 F.3d 843,

---

1. The individual defendants Marvin Goldman, Paul Goldman, and Alex Reizner withdrew their opposition to J.K. Funding's motion at oral argument.

2. The plan of reorganization specified that creditors of the debtor who had litigation pending retained the right to offset and to proceed with their claims. J.K. Funding argues that this explicit limitation on the scope of potential liability precludes holding it liable for plaintiffs' claims. This limitation is simply not relevant here in view of the fact that their litigation was not pending at the time of the bankruptcy and the plaintiffs did not have notice of the bankruptcy.

3. See Tr. of Arg., 6/30/95 at 9, 42–43.

845 (9th Cir.1995) (stating that successor liability as applied to federal statutes is governed by federal law); *E.E.O.C. v. G–K–G, Inc.*, 39 F.3d 740, 747 (7th Cir.1994) (applying federal common law doctrine of successor liability to ADEA claim); *Beazer East, Inc. v. Mead Corp.*, 34 F.3d 206, 212 (3d Cir.1994) (noting that the majority of courts have found that federal law applies to successor liability under CERCLA); *New York v. N. Storonske Cooperage Co., Inc.*, 174 B.R. 366 (N.D.N.Y.1994) (noting that the courts of appeals disagree about whether to apply state or federal common law to successor liability under CERCLA).

In any case, it is unnecessary to resolve this issue at this time because, with the exception of the strict products liability context, New Jersey follows a general rule of successor liability that courts commonly apply to both state and federal claims. *See Luxliner P.L. Export, Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 73 (3d Cir.1993) (holding that outside the strict products liability context, New Jersey courts follow traditional successorship doctrine); *Glynwed, Inc. v. Plastimatic, Inc.*, 869 F.Supp. 265, 270 (same); *Ladjevardian v. Laidlaw–Coggeshall, Inc.*, 431 F.Supp. 834, 838 (S.D.N.Y. 1977) (applying traditional successorship doctrine to claims based on federal securities laws); *N. Storonske Cooperage Co.*, 174 B.R. at 375 (refraining from deciding which law applies to federal claims because state and federal rules are parallel).[4]

Although J.K. Funding argues that established successorship principles do not apply to the plaintiffs' RICO claims against it, it has offered nothing to support this argument. The few courts to confront this issue have held that the principles of successor liability apply to RICO claims. *See, e.g., Continental Grain Co. v. Pullman Standard, Inc.*, 690 F.Supp. 628 (N.D.Ill.1988); *Ghouth v. Conticommodity Servs., Inc.*, 642 F.Supp. 1325, 1328 (N.D.Ill.1986) (recognizing the theory in the RICO context, but finding the pleading deficient); *Rodriguez v. Banco Cent.*, 777 F.Supp. 1043, 1065 (D.P.R.1991), *aff'd*, 990 F.2d 7 (1993). Only the *Rodriguez* case offers any discussion about the appropriateness of successorship principles in RICO actions. In its decision, the court recognized the viability of successor liability in the RICO context but declined to impose liability for RICO offenses on a successor bank on the facts of that case. The court noted that "if there is a showing of knowledge, constructive or actual, by the purchaser at the time of the transaction, the equation is altered and liability might lie." 777 F.Supp. at 1065. Because the defendant is unable to point to any provision in the RICO statute or to any other authority to support its assertion that successor liability cannot apply to RICO claims, the Court finds that successor liability can apply to all of the plaintiffs' claims against the defendant J.K. Funding, including the RICO claims.

■■■ As a general rule, a successor corporation is not responsible for the debts and liabilities of its predecessor. *Ramirez v. Amsted Indus., Inc.*, 86 N.J. 332, 340, 431 A.2d 811, 815 (1981); *Fletcher Cyc. Corps.* § 7122 (Perm. ed. & Supp.1994).[5] However, there are four established exceptions to this nonliability rule. A purchasing company will be liable for the obligations of its predecessor if (1) there is an express or implied agreement to assume the other company's debts

---

**4.** If anything, the federal successorship doctrine is more expansive than state law. For some federal employment or discrimination claims, courts have recognized "remedial successor liability." *See, e.g., Chicago Truck Drivers*, 59 F.3d at 49; *G–K–G*, 39 F.3d at 748–49; *Fletcher Cyc. Corp.* § 7122 (Perm.Ed. & 1994 Supp.). Under this exception, a successor corporation is liable as long as the successor had prior notice of the liability in question and where there is sufficient evidence of continuity of operations between the predecessor and successor. *See Chicago Truck Drivers*, 59 F.3d at 49 (applying this exception to ERISA claims). Courts have invoked this exception when the vindication of an important statutory policy necessitates the creation of this additional and even broader exception to the common-law nonliability rule. *See Fletcher Cyc. Corp.* § 7122 (Perm.Ed. & 1994 Supp.).

**5.** The fact that in this case the "predecessor company" was a partnership and not a corporation does not preclude the application of the traditional successor liability doctrine. *See Jackson v. New Jersey Mfrs. Ins. Co.*, 166 N.J.Super. 448, 454–56, 400 A.2d 81, 84 (N.J.Super.Ct.App.Div.1979) (applying the traditional approach to determine whether a company was a successor of a partnership).

and obligations; (2) the transaction was fraudulent; (3) there was a de facto consolidation or merger of the companies; or (4) the purchasing company was a mere continuation of the selling company. *Ramirez*, 86 N.J. at 340, 431 A.2d at 815; *see Fletcher Cyc. Corp.* § 7122 (Perm. ed. & Supp.1994).[6] The plaintiffs allege that J.K. Funding's acquisition of the assets of the Rols partnership falls within these exceptions.

■ The defendant argues that the theory of successor liability does not apply in this case because the defendant is a separate and distinct entity that had nothing to do with the loan at issue. This argument reveals a complete misunderstanding of the very principle of successor liability, which is fundamentally a form of secondary, vicarious liability imposed upon an innocent party. As the court in *Wilkerson v. C.O. Porter Mach. Co.*, 237 N.J.Super. 282, 567 A.2d 598 (N.J.Super.Ct.Law Div.1989), explained, a plaintiff alleging successor liability "does not allege that the purchaser of the assets did, or failed to do, anything that contributed to his injury." 237 N.J.Super. at 300–01, 567 A.2d at 607–08. Instead, the court stated, a defendant's liability depends on the relationship between the defendant and the bankrupt.

> In every form of vicarious liability, the blameworthy behavior or status of the primarily liable person must be established as a prerequisite to recovery against the secondarily liable person. However, there are several circumstances where the primarily liable defendant is insulated in some way from judgment (even by discharge in bankruptcy) without destroying the right to recover against the secondarily liable person.

*Wilkerson*, 237 N.J.Super. at 300–01, 567 A.2d at 607–08. The issue of whether Jerry Kaplan knew about any alleged wrongdoing by Rols may, indeed, be relevant to the ultimate determination of whether, under the appropriate standards, J.K. Funding is a successor to the Rols partnership. However, this issue, which involves numerous questions

of fact, cannot be resolved in the context of a motion for summary judgment.

■ J.K. Funding also argues that successor liability does not apply to any of the plaintiffs' state or federal claims because it purchased the assets of the Rols partnership pursuant to an asset purchase agreement and as part of the bankruptcy reorganization plan of the Rols partnership without agreeing to assume liability for claims like the plaintiffs'. There is, however, authority that neither party cites indicating that neither New Jersey successor liability law nor the Bankruptcy Code precludes the application of successor liability under such circumstances.

The only New Jersey courts to address this issue—two New Jersey superior courts not cited by the parties—held that the traditional doctrine of successor liability remains viable even when there is an intervening bankruptcy. In *Wilkerson*, 237 N.J.Super. 282, 567 A.2d 598, the court held that where the defendant purchased in the context of a Chapter 11 bankruptcy proceeding the assets of a manufacturer of a product that had previously caused injury to the plaintiff, the defendant was not insulated, as a matter of law, from the imposition of successor liability. *Id.* at 285, 567 A.2d at 599. The court noted that "[t]he mere fact that the bankruptcy order approve[d] a sale purporting to transfer assets free and clear of various claims . . . should not be determinative. . . ." *Id.* at 288, 567 A.2d at 601. After examining the leading New Jersey cases that outlined the doctrine of successor liability in that state, the *Wilkerson* court concluded that there was nothing in those decisions to "support the argument that a transfer in bankruptcy is to be shielded from exposure to successor liability." *Id.* at 292, 567 A.2d 598. Instead, the issue of whether the defendant could be held liable as a successor required the resolution of issues of both law and fact, precluding summary judgment. *Id.* at 303–04, 567 A.2d at 609.

The court in *Goncalves v. Wire Tech. & Mach. Co.*, 253 N.J.Super. 327, 601 A.2d 780 (N.J.Super.Ct.Law Div.1991), reached a simi-

---

6. In addition, New Jersey recognizes the "products line" exception, under which a successor may be held strictly liable in tort for a predeces- sor's defective products. *Ramirez*, 86 N.J. at 347–48, 431 A.2d at 819. This exception is inapplicable to this case.

lar conclusion. In that case, the court held that the purchaser of a defunct manufacturer's assets is not, as a matter of law, immune from liability to a plaintiff injured by defective equipment that manufacturer made merely because the purchase occurred in a liquidation proceeding under Chapter 7 of the Bankruptcy Code. *Id.* at 334, 601 A.2d at 783–84. Although *Wilkerson* and *Goncalves* were decided on facts different from those of the present case, and although they were decided in the context of strict products liability, which involves particular policy considerations, they continue to represent the most instructive authority decided under New Jersey law on this issue. The Court is unable to find, nor have the parties offered, any authority that indicates that New Jersey law does not recognize successorship liability principles when succession follows bankruptcy proceedings.

 Furthermore, there is no federal preemption of state law successor liability merely because the sale of assets occurred in a bankruptcy proceeding. *See Goncalves* at 331, 601 A.2d at 782 (noting that there is no federal preemption of state successorship liability law); *In re Savage Indus., Inc.,* 43 F.3d 714, 717, 723 (1st Cir.1994) (the bankruptcy court could not enjoin the prosecution of a state-law based successor product-line liability action against an all-asset transferee when the state court plaintiff was not afforded appropriate notice of either the material terms of the all-asset transfer or the Chapter 11 plan); *Everest v. American Transp. Corp.,* 685 F.Supp. 203, 207–08 (D.Minn.1988) (declining to impose successor liability for a products liability claim on a company that purchased the assets of another company in bankruptcy under a plan that specified that the purchaser would assume only certain liabilities and granting summary judgment for the defendant, but only after analyzing the facts of the case and concluding that they did not fall within any of the recognized exceptions to the no-successor liability rule); *see also Ross Controls, Inc. v. Department of the Treasury,* 160 B.R. 527, 532 (E.D.Pa.1993) (citing *Goncalves* in support of the proposition that filing for bankruptcy under Chapter 7 does not preclude a company from having a successor corporation for the purposes of tax liability). This is particularly true when the plaintiff does not receive notice of the bankruptcy and accordingly fails to pursue possible remedies in that proceeding.

Contrary to the defendant's assertion, the Court of Appeals for the Second Circuit has not decided this issue. J.K. Funding incorrectly cites *Forde v. Kee–Lox Mfg. Co.,* 437 F.Supp. 631 (W.D.N.Y.1977), *aff'd on other grounds,* 584 F.2d 4 (2d Cir.1978), to support its argument. J.K. Funding relies on the district court's reasoning in that case; however, the Court of Appeals specifically did not affirm that basis of the lower court's decision. In *Forde,* the district court granted summary judgment for the defendant on the plaintiff's Title VII claim where the defendant had purchased the assets of the allegedly culpable party in a bankruptcy liquidation sale "free of all claims." *Forde,* 437 F.Supp. at 635. In affirming the decision of the district court, the Court of Appeals explicitly noted that it "express[ed] no view" on the district court's reasoning, but affirmed the district court's decision concluding that, on the facts, the defendant could not be held liable as a successor. *Forde,* 584 F.2d at 5–6. Indeed, this explicit refusal indicates that the Court of Appeals was not prepared to accept the blanket proposition J.K. Funding espouses in this case.

The opinion by the Court of Appeals for the Seventh Circuit in *Chicago Truck Drivers,* 59 F.3d 48, is particularly persuasive on this issue. In that case, the court held that successor liability applies to companies that obtain assets as a result of a bankruptcy proceeding. The court reasoned that there was no reason to offer such companies protection from successor liability that is not available for companies that are distressed but not yet bankrupt. *Id.* at 50.

 The court also rejected the argument that successor liability under such circumstances would frustrate the scheme of the Bankruptcy Code by giving unsecured creditors priority over secured creditors. *Id.* at 51. The court stated that a successor liability claim "does not directly implicate the Bankruptcy Code, since the underlying bankruptcy proceeding is long over." *Id.* at 50 n.

2. Once the bankruptcy proceeding is completed, the ordering of creditors is meaningless because the bankrupt has ceased to exist. *Id.* at 51. If a plaintiff pursues a claim under the theory of successor liability, the success of such a claim can have absolutely no effect on the availability of funds for other creditors because all of the debtor's funds have been distributed. *Id.* Furthermore, the court stated, even a plaintiff who unsuccessfully sought relief in the bankruptcy proceeding should be permitted to assert a claim under successor liability principles. *Id.* Although prior opportunities for relief are relevant for determining whether to allow successor liability, they are not dispositive. *Id.* After all, the court noted, "a second chance is precisely the point of successor liability." *Id.*

■■■ In this case, the case for successor liability is even stronger: unlike the plaintiffs in *Chicago Truck Drivers,* the plaintiffs here allege that they had no notice of the prior bankruptcy proceedings and therefore never pursued a claim in bankruptcy. There is no per se rule under state or federal law that would prevent the application of successor liability to state and federal causes of action asserted against J.K. Funding; instead, whether successor liability applies is a question of fact. As the Supreme Court has stated, "in light of the difficulty of the successorship question, the myriad factual circumstances and legal contexts in which it can arise, and the absence of congressional guidance as to its resolution, emphasis on the facts of each case as it arises is especially appropriate." *Howard Johnson Co., Inc. v. Detroit Local Joint Exec. Bd.,* 417 U.S. 249, 256, 94 S.Ct. 2236, 2240, 41 L.Ed.2d 46 (1974).

In this case, the plaintiffs point to various issues of fact in support of their argument that, under the appropriate state and federal tests, J.K. Funding may be liable as a successor to the Rols partnership. They note, among other things, that J.K. Funding was

to have the exclusive right to conduct business under the name Rols Capital Co.; that key management personnel of the Rols partnership would continue at J.K. Funding, including the in-house counsel; that Marvin Goldman and Paul Goldman agreed to assist Kaplan in collecting various loans; that J.K. Funding would continue at the same address and with the same telephone number as the Rols partnership; that J.K. Funding would receive a loan from Marvin Goldman; that Marvin Goldman and Paul Goldman would serve as consultants to J.K. Funding; and that there was a cessation of the Rols partnership's business when J.K. Funding was formed. Relying on these facts, the plaintiffs allege that J.K. Funding is a mere continuation of Rols as indicated by the alleged continuity of ownership, continuity of management, continuity of personnel, continuity of physical location, and continuity of assets and general business operations. Because the Court cannot resolve these issues of material fact in the context of a motion for summary judgment,[7] the motion is denied.

■■■ The court notes, however, that although the parties have not argued the issue, the pleadings are woefully deficient in arguing successor liability. Therefore, the plaintiffs are directed to file an amended complaint stating with specificity their claim for successor liability and the basis for that claim, and the defendants will be afforded the opportunity to respond. *See Musikiwamba v. ESSI, Inc.,* 760 F.2d 740 (7th Cir.1985) (acknowledging successor liability for claims under 42 U.S.C. § 1981, reversing dismissal of complaint, and remanding to provide an opportunity to amend the grossly deficient allegations in the complaint).

### III.

■■■■ J.K. Funding also moves to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) the plaintiffs' RICO claims under §§ 1962(c), 1962(a) and 1962(d).[8] Because J.K. Funding

---

7. The court in *Wilkerson* found that the issue of the defendant's status as a successor was a mixed question of law and fact, making it an issue for the court and not the jury. It is unnecessary to resolve the appropriate procedure for the determination of this issue in the present case at this time. 237 N.J.Super. at 303–04, 567 A.2d at 609. Indeed, if necessary, the Court will accept additional briefing on this issue prior to the trial in this matter.

8. Although in their complaint the plaintiffs assert a claim only under § 1962(c), they assert claims

has already answered the complaint, however, a motion under Fed.R.Civ.Pro. 12(b)(6) is untimely. The plaintiffs have never raised this issue; instead, they have briefed and argued extensively the adequacy of their RICO allegations. Therefore, this Court will construe the motion as a motion for judgment on the pleadings pursuant to Fed. R.Civ.P. 12(c), which would be timely. For the reasons explained below, this part of the defendant's motion is granted.

### A.

█ In their complaint, the plaintiffs allege that defendants Marvin Goldman, Paul Goldman, Jerome Goldman, Alex Reizner, and the Rols partnership violated § 1962(c). That subsection provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). *See Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir.1983), *cert. denied sub nom. Moss v. Newman*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984); *Curiale v. Capolino*, 883 F.Supp. 941, 947 (S.D.N.Y.1995).

Under this section, the RICO "person" must conduct the affairs of the RICO "enterprise" through a pattern of racketeering activity. In their complaint, the plaintiffs allege that the Rols partnership constituted the RICO "enterprise" and that Marvin Goldman, Paul Goldman, Jerome Goldman, and Alex Reizner were "persons" who were employed by or associated with the Rols

partnership. (Compl. ¶¶ 79–80.) In their RICO case statement, the plaintiffs allege an alternative associated-in-fact enterprise consisting of the Rols partnership, Marvin Goldman, Paul Goldman, Alex Reizner and Jerome Goldman. (RICO case statement at 33.) J.K. Funding argues that the plaintiffs fail to state a legally sufficient claim against J.K. Funding because § 1962(c) requires that the "enterprise" and the "persons" who participated in the conduct of the enterprise be separate and distinct.

█ J.K. Funding is correct that under § 1962(c), the "enterprise" and the "persons" must be separate and distinct. *See Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir.1994) (under § 1962(c), the RICO "person" who conducts the affairs of the RICO "enterprise" through a pattern of racketeering activity must be distinct from the enterprise); *see also Bennett v. United States Trust Co. of New York*, 770 F.2d 308, 315 (2d Cir.1985) ("[W]e follow the majority view and hold that under section 1962(c) a corporate entity may not be simultaneously the 'enterprise' and the 'person' who conducts the affairs of the enterprise through a pattern of racketeering activity."), *cert. denied*, 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986). A corporate entity cannot be both the RICO person and the RICO enterprise under § 1962(c). *Riverwoods*, 30 F.3d at 344. Accordingly, the Rols partnership, through J.K. Funding, its alleged successor, cannot be liable for a violation of § 1962(c) under the plaintiffs' allegation that the Rols partnership constituted the RICO enterprise. Recognizing the clarity of the law on this point, the plaintiffs withdrew at oral argument their allegation that the Rols partner-

---

under §§ 1962(a) and 1962(d) in their RICO case statement. On a motion to dismiss, the Court must take as true the allegations contained in the RICO case statement, along with those contained in the complaint. *See, e.g., McLaughlin v. Anderson*, 962 F.2d 187, 189 (2d Cir.1992) ("In analyzing the issues on this motion to dismiss, we must take as true the facts as alleged in the complaint and as supplemented by the RICO case statement ordered by the district court."); *Halbrecht v. Prudential–Bache Properties, Inc.*, Civ. No. H–90–799, 1992 WL 336757, at *10 (D.Conn. July 25, 1992) (considering the RICO

case statement, along with complaint, in ruling on defendants' motion to dismiss). Therefore, at oral argument, the Court suggested, and the parties agreed, that it is appropriate for the Court to address the plaintiffs' claims under § 1962(a) and § 1962(d) at this time, as well as the plaintiffs' claim under § 1962(c). However, because individual defendant Jerome Goldman chose not to attend oral argument, the parties agreed that at that time it would not have been appropriate to deem the complaint amended to incorporate the claims raised only in the RICO case statement.

ship constituted the enterprise. *See* Tr. of Arg., 6/30/95, at 52.

█ The plaintiffs' alternative allegation of an associated-in-fact enterprise is also insufficiently distinct from the Rols partnership to withstand a motion to dismiss. Although the Court of Appeals has explained that a § 1962(c) claim can be sufficient where there is only partial overlap between the RICO person and the RICO enterprise, *see, e.g., Jacobson v. Cooper,* 882 F.2d 717, 720 (2d Cir.1989) (citing *Cullen v. Margiotta,* 811 F.2d 698, 730 (2d Cir.), *cert. denied sub nom. Nassau County Republican Comm. v. Cullen,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987)), and that, therefore, a RICO enterprise can consist of a corporate defendant associated with others to form an enterprise that is "sufficiently distinct" from the corporate entity itself, the "distinctness requirement may not be circumvented[ ]" by alleging a RICO enterprise that "consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant...." *Riverwoods,* 30 F.3d at 344 (citations omitted).[9] The Court of Appeals explained:

> Because a corporation can only function through its employees and agents, any act of the corporation can be viewed as an act of such an enterprise, and the enterprise is in reality no more than the defendant itself. Thus, where employees of a corporation associate together to commit a pattern of predicate acts in the course of their employment and on behalf of the corporation, the employees in association with the corporation do not form an enterprise distinct from the corporation.

*Id.* (citations omitted); *see also Rodriguez,* 777 F.Supp. at 1054 ("Under 1962(c), the enterprise and the 'person' who violates the statute must be distinct from each other, the former being exempt from liability, the latter being the targeted defendant. The distinction requirement is not satisfied by merely naming a corporation and its employees, affiliates, and agents as an association-in-fact,

since a corporation acts through its employees, subsidiaries and agents, and would thereby be merely associating with itself.") (citations omitted).

Here, the plaintiffs make conclusory allegations in the RICO case statement that the associated-in-fact enterprise is distinct from the Rols partnership acting through its employees and agents. For example, they claim:

> [T]he purpose, function and course of conduct of the enterprises [was] to engage in the lending of money to minority-owned businesses and other residents of, *inter alia,* the states of New York and New Jersey. Defendants Marvin Goldman, Paul Goldman, Alex Reizner and Jerome Goldman, along with other individuals formed a decision making body that made and carried out decisions affecting the operation of the ROLS enterprise. These decisions related to the making and collecting of loans, as well as other related activities. Although the enterprises and their members and associates engage in lawful activities, the enterprises and their members and associates are also engaged in violating RICO as described above, with the purpose of defrauding borrowers by fraudulently charging usurious interest rates.... Each enterprise had an existence separate and apart from the pattern of racketeering activity ... in that each enterprise engaged in the lawful loaning of funds to individuals, and in the running of related businesses. Each enterprise had an existence beyond the predicate acts ... and functioned as a lender of money to numerous borrowers other than the plaintiffs. Furthermore, each enterprise existed and was operated in its usual manner during the time intervals between its fraudulent activities in violation of mail and wire fraud. Thus, each enterprise had an existence beyond that which was merely to commit the predicate racketeering acts.

(RICO case statement at 33–35.)

Although the plaintiffs rely on the fact that the actions of the defendants allegedly violat-

---

**9.** In support of their respective arguments, both the plaintiffs and J.K. Funding have pointed to cases analyzing the distinctness requirement of § 1962(c) in the context of corporate defendants. Neither side has argued or suggested in any way

that the fact that the Rols partnership was a partnership, and not a corporation, makes these cases any less relevant to the issue of whether the plaintiffs have alleged a sufficiently distinct enterprise under § 1962(c).

ed RICO to distinguish the activities of the enterprise from the regular activities of the defendants, these allegations do not establish, in any way, that the alleged RICO-violating activity amounts to anything more than employees of the Rols partnership carrying out the business of the Rols partnership. In *Atkinson v. Anadarko Bank and Trust Co.*, 808 F.2d 438 (5th Cir.1987), *cert. denied*, 483 U.S. 1032, 107 S.Ct. 3276, 97 L.Ed.2d 780, which was cited with approval in *Riverwoods*, the Court of Appeals for the Fifth Circuit rejected a similar argument in a case where a bank, its holding company, and three bank employees allegedly committed mail fraud, a predicate act for a RICO charge, by mailing false statements requesting excessive interest payments. The court held that the requirements of § 1962 were not met because there was no evidence that the defendants "were associated in any manner apart from the activities of the bank.... The mailing of the loan statements was an activity of the bank. There is no other evidence of any other activity on part of the alleged enterprise." *Id.* at 441. As the court in *Langley v. American Bank of Wisconsin*, 738 F.Supp. 1232 (E.D.Wis.1990), held, an alleged association-in-fact does not have an existence apart from the bank merely because the alleged racketeering activities are not legitimate bank activities. The court stated that "conducting affairs of an ongoing legitimate business through illegitimate means does not necessarily make the business a culpable actor rather than a passive racketeering tool" under § 1962(c). *Id.* at 1241. Absent allegations that the bank and its employees were associated in any manner apart from ordinary bank activities, the court held, the requirements of § 1962(c) were not met. *Id.*

Like the plaintiffs in *Riverwoods* and *Langley*, the plaintiffs here offer no evidence that the partnership and the individuals defendants had any association aside from the ordinary business of the partnership. In-

deed, to support their fraud claim the plaintiffs allege in their complaint that "[a]t all times set forth herein Marvin Goldman, Paul Goldman, Jerome Goldman and Alex Reizner were acting as agents for ROLS, and were acting within the apparent scope of their authority as employees and/or agents of ROLS." (Compl. ¶ 71.) Therefore, the plaintiffs have failed to set forth a sufficient claim under § 1962(c). *See, e.g., C.A. Westel de Venezuela v. American Tel. & Tel. Co.*, No. 90 Civ. 6665, 1994 WL 558026, at *8 (S.D.N.Y. Oct. 11, 1994) (dismissing a claim under § 1962(c) for failure to state a claim where "[p]laintiff's complaint nowhere pleads facts that separate and distinguish the RICO enterprise from the named defendants nor does it plead facts that suggest that the actions taken by defendants in this case are sufficiently distinguishable from the regular activities of [the corporate defendant] to permit the existence of a distinct enterprise[ ]").[10]

In some cases where the pleading of an associated-in-fact enterprise is apparently deficient, courts have permitted a plaintiff to proceed to trial, where the plaintiff will have the burden of proving a sufficiently distinct enterprise under § 1962(c). *See, e.g., Greenfield v. Professional Care, Inc.*, 677 F.Supp. 110, 116 (E.D.N.Y.1987); *Kress v. Hall-Houston Oil Co.*, No. Civ. A. 92–543, 1993 WL 166274, at *9 (D.N.J. May 12, 1993). Here, however, given the obvious deficiency in the plaintiffs' pleadings, the pleadings are not sufficient to withstand a motion to dismiss. The plaintiffs should, however, be afforded the opportunity to file an amended complaint if they can in good faith make the necessary allegations to proceed with their claim.

### B.

Plaintiffs' § 1962(a) claim contained in their RICO case statement fares no better. Section 1962(a) provides as follows:

---

**10.** The present case is distinguishable from the recent Court of Appeals decision in *Securitron Magnalock Corp. v. Schnabolk et al.*, 65 F.3d 256 (2d Cir.1995), where the court held that two corporations and an individual who was an officer or agent of both could constitute a RICO enterprise under § 1962(c). *Id.* at 260. Unlike the case here, *Securitron* involved two separate corporations at the very least, and the Court of Appeals explicitly found that both of those corporations were decidedly distinct entities. *Id.* at 260.

It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce....

18 U.S.C. § 1962(a). To state a claim under this section, the plaintiffs must make two basic allegations: (1) that the defendants used or invested racketeering income to acquire or maintain an interest in the alleged enterprise; and (2) that the plaintiffs suffered injury as a result of that investment by the defendants. *O & G Carriers, Inc. v. Smith,* 799 F.Supp. 1528, 1542 (S.D.N.Y. 1992). The Court of Appeals explicitly has held that to state a civil claim under § 1964(c) for a violation of Section 1962(a),[11] a plaintiff must allege injury from the defendants' investment of racketeering income in an enterprise; it is not sufficient to allege injury only from the predicate acts of racketeering. *Ouaknine v. MacFarlane,* 897 F.2d 75, 82–83 (2d Cir.1990).

The plaintiffs' claim under § 1962(a) is deficient because the plaintiffs have not alleged that the defendants' investment of racketeering income injured them. Although the plaintiffs claim in their RICO case statement that "[t]he investment of [the income derived from the pattern of racketeering activity and the collection of the unlawful debt] in the enterprises enabled defendants to continue their fraudulent behavior and cause continuous injury to plaintiffs[,]" this allegation is insufficient to state a claim. *See, e.g., Update Traffic Sys., Inc. v. Gould,* 857 F.Supp. 274, 282–83 (E.D.N.Y.1994) ("Th[e] investment-injury requirement is not satisfied merely because the defendant/enterprise has reinvested money from the racketeering acts back into its own operations, thus enabling

the scheme to continue.... [P]laintiff must show that it was injured by the investment itself."); *Dayton Monetary Assocs. v. Donaldson, Lufkin & Jenrette,* Nos. 91 Civ. 2050, 91 Civ. 4944, 91 Civ. 5000, 91 Civ. 5622, 91 Civ. 6432, 91 Civ. 2059, 1993 WL 410503, at *3 (S.D.N.Y. Oct. 14, 1993) ("Plaintiffs' allegation that the investment of racketeering income created and sustained the enterprises by providing funding and 'the appearance of legitimacy' is insufficient.") (citations omitted); *Vista Co. v. Columbia Pictures Indus., Inc.,* 725 F.Supp. 1286, 1299–1300 (S.D.N.Y. 1989) (holding that the allegations that the defendant invested or used the income derived from its pattern of racketeering activity "to facilitate its own general operations and that the continuing operation of [the defendant] injured the plaintiffs[ ]" did not sufficiently allege investment injury under § 1962(a)); *DeMuro v. E.F. Hutton,* 662 F.Supp. 308, 308–09 (S.D.N.Y.1986) (dismissing a claim under § 1962(a) where the plaintiffs alleged that the investment of the racketeering proceeds created incentive for and rewarded the commission of the fraud and financed the defendant's office expenses, permitting the continuing defrauding of the plaintiffs); *Galerie Furstenberg v. Coffaro,* 697 F.Supp. 1282, 1288–89 (S.D.N.Y.1988) (even if the investment of funds derived from the alleged racketeering activity "enabled defendants to pursue their racketeering activities with enhanced vigor," the alleged injury was caused by the alleged underlying racketeering activity and not by the investment of racketeering income).

Therefore, the plaintiffs' claim under § 1962(a) is dismissed without prejudice.

### C.

The plaintiffs also assert a claim under § 1962(d), which provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b) or (c) of this section." 18 U.S.C. § 1962(d). In order to state a claim for conspiracy, the plaintiffs must claim that each alleged conspirator agreed to commit at least two predicate acts of racketeering activ-

---

**11.** Section 1964(c) authorizes a private cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962."

ity. *Hecht v. Commerce Clearing House*, 897 F.2d 21, 25 (1991). The Court grants the defendant's motion to dismiss.

The conclusory nature of the plaintiffs' allegations with respect the alleged conspiracy requires dismissal of the plaintiffs' claim under § 1962(d). The only conspiracy claim is made in the RICO case statement, and the plaintiffs have failed to allege with particularity an agreement by the Rols partnership to commit the requisite predicate acts. In their case statement, the plaintiffs merely assert that the defendants "conspired to defraud the plaintiffs," "assent[ed] to the fraudulent activities," and were "aware of the monthly loan payments." (RICO case statement at 38). These allegations are insufficient because they do not provide a adequate basis from which to infer a conspiracy. *See Hecht*, 897 F.2d at 25 ("Because the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement.") (citations omitted); *Trautz v. Weisman*, 809 F.Supp. 239, 246 (S.D.N.Y.1992) (at the very least, a plaintiff must allege facts that imply an agreement to commit two predicate acts to state a sufficient claim under § 1962(d); there must be actual knowing participation by the defendant; mere knowledge of the conspiracy is insufficient); *Laverpool v. New York City Transit Auth.*, 760 F.Supp. 1046, 1060 (E.D.N.Y.1991) ("Bare or conclusory allegations of participation in a conspiracy under section 1962(d) will not avail on a motion to dismiss, and the plaintiff must plead allegations that each defendant knowingly agreed to participate in the conspiracy, particularly when the predicate acts alleged are fraud.") (citations omitted); *Friedman v. Arizona World Nurseries Ltd. Partnership*, 730 F.Supp. 521, 548–49 (S.D.N.Y.1990), *aff'd*, 927 F.2d 594 (2d Cir.1991) (conclusory allegations that did not sufficiently allege that each defendant personally agreed to commit two or more predicate acts held insufficient).

Therefore, plaintiffs' § 1962(d) claim is dismissed.

 Because leave to replead is to be liberally granted, the plaintiffs are granted leave to replead their RICO claims in their complaint. *See Devaney v. Chester*, 813 F.2d 566, 569 (2d Cir.1987) (leave to amend pleadings "shall be freely given when justice so requires"); *Trautz v. Weisman*, 809 F.Supp. 239, 249 (S.D.N.Y.1992). The pleadings in this case, however, have been thoroughly deficient, and the plaintiffs are reminded that they must have a good faith basis for making the specific legal and factual allegations that would be required to replead their claims.

## IV.

 For all of the foregoing reasons, J.K. Funding's motion for summary judgment is denied and its motion, in the alternative, to dismiss the plaintiffs' RICO claims against it is granted. The RICO claim is dismissed without prejudice. The plaintiffs are directed to file an amended complaint within 20 days setting forth the particulars of their claims for successor liability. The plaintiffs are granted leave to replead their RICO claim in that complaint if they are able to do so. The parties should also consult with Magistrate Judge Francis on the schedule to submit responses to the amended complaint and to submit the Joint Pretrial Order.[12]

**SO ORDERED.**

12. The plaintiffs contend, in passing in their papers, not only that J.K. Funding's motion should be denied, but also that they are entitled to summary judgment. Because there is no such motion pending before the Court, this "application" is denied.

With respect to any remaining issues with respect to discovery, including any dispute with respect to whether discovery is closed, these issues, if appropriate, should be raised before Magistrate Judge Francis, who has been supervising discovery.